IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 09-cv-02121-REB-BNB

KAREN S. ZANDER,

Plaintiff,

v.

CRAIG HOSPITAL, and
RICK BAYLES, PH.D., CNIM,

Defendants.
_____

**ORDER**
_____

This matter arises on **Plaintiff's Motion to Compel Documents Claimed as Privileged By Defendant Craig Hospital** [Doc. # 39, filed 2/15/2010] (the "Motion to Compel"). I held a hearing on the Motion to Compel this morning, and took the matter under advisement. The Motion to Compel is GRANTED.

This is a negligence case against Dr. Rick Bayles, Ph.D., CNIM, in which the plaintiff alleges that Dr. Bayles breached the standard of care in connection with his responsibilities to monitor and report the plaintiff's somatosensory-evoked potential waveforms during spinal surgery performed by Dr. Scott Falci, M.D.[1] Complaint [Doc. # 1] at pp. 15-17. Craig Hospital is sued on a theory of respondeat superior as the employer of Dr. Bayles. Id. at pp. 17-18. The plaintiff claims that she was rendered paraplegic as a result of Dr. Bayles' negligence. Scheduling Order [Doc. # 11] at p. 4.

---

[1]The plaintiff initially included a claim against Dr. Falci for medical negligence, but that claim has been dismissed. Order Dismissing Defendant, Scott Falci, M.D., Only [Doc. # 14].

Dr. Falci was deposed and testified that he conducted an investigation after the plaintiff's surgery to attempt to determine what happened to lead to her paralysis. Deposition of Scott Falci [Doc. # 39-3] (the "Falci Depo.") at p. 89 line18 through p. 94 line 9. In response to follow-up questioning about Dr. Falci's investigation, Craig Hospital interposed an objection based on the "quality assurance privilege" and instructed Dr. Falci not to answer. Falci Depo. [Doc. # 39-3] at p. 94 lines 13-18. Dr. Falci's lawyer joined in the objection and instructed his client not to answer. Id. at p. 94 line 15 through p. 96 line 3. Subsequently, the plaintiff sought through a request for the production of documents "a copy of Craig Hospital's quality management program." Defendant Craig Hospital's Answers to Plaintiff's First Request for Production of Documents [Doc. # 39-6] (the "Written Discovery") at p. 2. Craig Hospital objected to the request, stating:

> [The request] seeks information protected from discovery by Colorado law. C.R.S. § 25-3-109(3) states that "<u>any</u> records, reports or other information . . . that are part of a quality management program . . . <u>shall be</u> confidential information. (Emphasis added). The statute states that the "records, reports and other information described in subsection (3) . . . shall not be subject to subpoena or discoverable or admissible as evidence in any civil or administrative proceeding." C..R.S. § 25-3-109(4). This request for production asks for a copy of the "quality management program" which is, by the plain language of the statute, confidential information and not subject to discovery.

Written Discovery [Doc. # 39-6] at p. 2.[2]

---

[2] The request seeks discoverable information. In particular, the quality management program may demonstrate that Dr. Falci's investigation is not subject to the quality assurance privilege established by section 25-3-109, in which case further inquiry of Dr. Falci about the results of his investigation would be allowed. Thus, the request is reasonably calculated to lead to the discovery of admissible evidence.

In further support of the objection, Craig Hospital provided a privilege log that listed documents withheld from production based on the asserted privilege. The plaintiff seeks an order compelling the production of the following four documents listed in the privilege log:

(1) Performance Improvement and Safety Management Plan, dated April 2008;

(2) Safety Management Policy, dated December 2007;

(3) Safety Management Policy, dated October 2006; and

(4) Failure Mode and Effects Analysis, dated August 2004.

Motion to Compel [Doc. # 39] at pp. 11-12. In addition, in opposing the Motion to Compel, Craig Hospital provided to me for *in camera* review a document captioned Quality/Performance Improvement Plan, adopted May 25, 1995 (the "QP Plan"). The QP Plan is not listed on the privilege log, but it was not produced to the plaintiff.

The quality assurance privilege relied on by Craig Hospital is contained at section 25-3-109, C.R.S., and provides in relevant part:

> (1) The general assembly hereby finds and declares that the implementation of quality management functions to evaluate and improve patient and resident care is essential to the operation of health care facilities licensed or certified by the department of public health and environment pursuant to section 25-1.5-103(1)(a). For this purpose, it is necessary that the collection of information and date by such licensed or certified health care facilities be reasonably unfettered so a complete and thorough evaluation and improvement of the quality of patient and resident care can be accomplished. To this end, quality management information relating to the evaluation or improvement of the quality of health care services shall be confidential, subject to the provisions of subsection (4) of this section, and persons performing such functions shall be granted qualified immunity. . . .
>
> (2) For purposes of this section, a "quality management program" means a program which includes quality assurance and risk management activities, the peer review of licensed health care

3

professionals not otherwise provided for in part 1 of article 36.5 of title 12, C.R.S., and other quality management functions which are described by a facility in a quality management program approved by the department of public health and environment. . . .

(3) Except as otherwise provided in this section, any records, reports, or other information of a licensed or certified health care facility that are part of a quality management program designed to identify, evaluate, and reduce the risk of patient or resident injury associated with care or to improve the quality of patient care shall be confidential information; except that such information shall be subject to the provisions of subsection (4) of this section.

(4) The records, reports, and other information described in subsection (3) and subsection (5.5) of this section shall not be subject to subpoena or discoverable or admissible as evidence in any civil action or administrative proceeding. No person who participates in the reporting, collection, evaluation, or use of such quality management information with regard to a specific circumstance shall testify thereon in any civil or administrative proceeding. However, this subsection (4) shall not apply to:

    (a) Any civil or administrative proceeding, inspection, or investigation as otherwise provided by law by the department of public health and environment or other appropriate regulatory agency having jurisdiction for disciplinary or licensing sanctions;

    (b) Persons giving testimony concerning facts of which they have personal knowledge acquired independently of the quality management information program or function;

    (c) The availability, as provided by law or the rules of civil procedure, of factual information relating solely to the individual in interest in a civil suit by such person, next friend, or legal representative. In no event shall such factual information include opinions or evaluations performed as a part of the quality management program.

    (d) Persons giving testimony concerning an act or omission which they have observed or in which they participated, notwithstanding any participation by them in the quality management program;

    (e) Persons giving testimony concerning facts they have

> recorded in a medical record relating solely to the individual in interest in a civil suit by such person.
>
> (5) Nothing in this section shall affect the voluntary release of any quality management record or information by a health care facility; except that no patient-identifying information shall be released without the patient's consent.

The Colorado quality assurance privilege created by section 25-3-109 contemplates that licensed health care facilities may create a "quality management program," which they may then submit to the Colorado department of public health and environment for approval. Section 25-3-109(2), C.R.S. After a facility obtains approval of its quality management program, it may engage in quality management functions, such as gathering and preparing "records, reports, or other information" to "identify, evaluate, and reduce the risk of patient care," subject to the quality assurance privilege. Section 25-3-109(3), C.R.S.

Section 25-3-109(3) provides that the "records, reports, or other information of [the] licensed . . . health care facility that are part of [the] quality management program . . . shall be confidential information. . . ." Id. The question raised by the Motion to Compel is whether the documents creating the quality management program (the "organic documents") are privileged, or whether the privilege attaches only to the materials gathered and prepared in connection with particular quality management investigations.

Discovery in federal court is governed by the Federal Rules of Civil Procedure, regardless of whether jurisdiction is based on a federal question or diversity of citizenship. Atteberry v. Longmont United Hospital, 221 F.R.D. 644, 646 (D. Colo. 2004). Where, as here, the "case [is] based upon a state cause of action, state law controls the determination of privileges." White v. American Airlines, Inc., 915 F.2d 1414, 1424 (10th Cir. 1990); see Fed. R.

5

Evid. 501 ([I]n civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law").

A party asserting a privilege has the burden of showing that the privilege applies. Atteberry, 221 F.R.D. at 649. To carry that burden, the party claiming the privilege must make a "clear showing" that the withheld information is privileged. Bethel v. United States, 242 F.R.D. 580, 583 (D. Colo. 2007). The framework for discovery established by the Federal Rules of Civil Procedure evidences a policy favoring the full disclosure of facts before trial to aid in the search for the truth. Id. at 584. Consistent with that policy, evidentiary privileges are disfavored. Herbert v. Lando, 441 U.S. 153, 175 (1979). Those privileges, which are "in derogation of the search for the truth," are "not lightly created nor expansively construed." United States v. Nixon, 418 U.S. 683, 710 (1974).

Privileges generally have prior conditions which must be satisfied before the privilege attaches. Thus, for example, Colorado law establishes an attorney-client privilege making confidential "any communication made by the client to [the attorney] or his advice given thereon in the course of professional employment. . . ." Section 13-90-107(1)(b), C.R.S. Before the privilege attaches, however, certain conditions must be shown to have existed. For example, the privilege attaches only to matters (1) communicated confidentially, Losavio v. District Court, 533 P.2d 32, 35 (Colo. 1975); (2) relating to the subject matter of the attorney's engagement, id.; and (3) not intended to be conveyed by the attorney to others. Hill v. Hill, 107 P.2d 597, 599 (Colo. 1940).

Similarly, in Bethel v. United States, 242 F.R.D. at 585, I found that the federal Veterans

Administration quality assurance privilege in connection with an investigation of medical services provided by the VA attached to protect documents arising from a "root cause analysis" only when the prerequisites established by 38 C.F.R. § 17.501(a)(2) were met, including that the analysis "must be 'designated by the reviewing office <u>at the outset</u> of the review as protected by 38 U.S.C. § 5705. . . .'" (Emphasis added.)

The statute creating the Colorado quality assurance privilege states that licensed health care facilities must collect "information and data" "to evaluate and improve patient . . . care." Section 25-3-109(1), C.R.S. In addition, the statute makes the "information relating to the evaluation or improvement of the quality of health care services" confidential. <u>Id</u>. It is the medical information and data collected for evaluation which is entitled to confidential treatment and which is privileged.

I find illogical the argument that the organic documents which create a facility's quality management program are privileged. Those organic documents define the scope of a facility's program. To make the organic documents privileged is to say that a facility may create a quality management program, which defines the scope of the quality assurance privilege for that facility, but that no outsider is entitled to know the contours of the privilege. As a result, the privilege for all practical purposes is undefined and unlimited. For example, if the organic documents creating a facility's quality management program require that the facility's chief medical officer must approve at the outset any investigation which will be subject to the quality assurance privilege,[3] but the organic document defining the contours of the privilege is itself privileged, no

---

[3]In general, this is the prior condition imposed by regulation on the VA quality assurance privilege to render an investigation privileged. <u>See</u> <u>Bethel v. United States</u>, 242 F.R.D. at 585 (noting that 38 C.F.R. § 17.501(a)(2) requires that a focused review must be "designated by the

outsider can know the conditions which must be satisfied for the privilege to apply and no outsider can test whether those condition were satisfied. Such a construction of the Colorado quality assurance privilege is contrary to the requirement that a privilege which is "in derogation of the search for the truth" may not be "expansively construed." United States v. Nixon, 418 U.S. at 710,

Craig Hospital has failed to meets its burden to make a clear showing that the Colorado quality assurance privilege applies to the organic documents here at issue.

IT IS ORDERED that the Motion to Compel is GRANTED.

IT IS FURTHER ORDERED that Craig Hospital shall produce the following documents in their entirety to the plaintiff on or before **March 9, 2010**:

(1) Performance Improvement and Safety Management Plan, dated April 2008;

(2) Safety Management Policy, dated December 2007;

(3) Safety Management Policy, dated October 2006;

(4) Failure Mode and Effects Analysis, dated August 2004; and

(5) Quality/Performance Improvement Plan, adopted May 25, 1995.

---

reviewing office at the outset of the review as protected by 38 U.S.C. §5705").

Dated March 2, 2010.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge