IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 09-cv-02121-REB-BNB

KAREN S. ZANDER,

Plaintiff,

v.

CRAIG HOSPITAL, and
RICK BAYLES, PH.D., CNIM,

Defendants.
_____

# ORDER
_____

This matter arises on **Defendants Craig Hospital and Rick Bayles, Ph.D, CNIM's Motion to Strike Plaintiff's Untimely Endorsement and Improper Supplemental Expert Endorsement of Lavar Best, Ph.D.** [Doc. # 146, filed 9/1/2010] (the "Motion to Strike"). The Motion to Strike is DENIED.

This is a negligence case against Dr. Rick Bayles, Ph.D., CNIM, in which the plaintiff alleges that Dr. Bayles breached the standard of care in connection with his responsibilities to monitor and report the plaintiff's somatosensory-evoked potential waveforms during spinal surgery performed by Dr. Scott Falci, M.D.[1] Complaint [Doc. # 1] at pp. 15-17. Craig Hospital is sued on a theory of respondeat superior as the employer of Dr. Bayles. Id. at pp. 17-18. The plaintiff claims that she was rendered paraplegic as a result of Dr. Bayles' negligence. Scheduling Order [Doc. # 11] at p. 4.

---

[1] The plaintiff initially included a claim against Dr. Falci for medical negligence, but that claim has been dismissed. Order Dismissing Defendant, Scott Falci, M.D., Only [Doc. # 14].

Pursuant to the case schedule, the plaintiff disclosed her expert witnesses by March 20, 2010. Among the experts identified in the plaintiff's initial disclosures was Dr. Lavar Best, a non-retained expert. The initial disclosures indicated that Dr. Best was designated to "testify regarding his review of the [somatosensory-evoked potential waveforms] data" and "in conformity with his deposition, if taken." Plaintiff's Fed. R. Civ. P. 26(a)(2) Expert Disclosures [Doc. # 146-1] at p. 6.

On August 13, 2010, the plaintiff supplemented her expert disclosures with respect to Dr. Best. Plaintiff's Fed. R. Civ. P. Supplemental 26(a)(2) Expert Disclosures [Doc. # 146-2] (the "Supplemental Disclosure"). The Supplemental Disclosure provides greater specificity concerning Dr. Best's anticipated testimony, to include: (1) "his role and responsibilities as Director of the Neuroscience Lab at Craig Hospital through 1998"; (2) "his role as a consultant to Craig Hospital between 1998 and January, 2010"; (3) his "orientation" of defendant Dr. Rick Bayles and "'reorientation' of Dr. Bayles a few months later"; and (4) "the standard practice and routine at Craig Hospital to obtain the preoperative baseline SSEP testing a few days before the tethered cord surgery," to "obtain a baseline in the operating room before the incision," and to "compare the baseline obtained in the operating room on the day of surgery before incision with the clinical baseline obtained a couple of days before the surgery." Supplemental Disclosure [Doc. # 146-2] at pp. 1-2.

The defendants argue that the Supplemental Disclosure should be stricken because it is untimely and because Dr. Best should not be compelled to provide expert testimony against his will.

I do not agree that the Supplemental Disclosure is untimely. Dr. Best was disclosed as a potential expert witness within the time required for the plaintiff's designation. He is a non-retained expert, however, and has not cooperated with or been available to the plaintiff. To the contrary, I am informed without contradiction:

> Defendants have had full access to Dr. Best throughout this litigation and could have easily obtained the information Plaintiff received during the deposition prior to August 12, 2010. Plaintiff was unable to contact Dr. Best due to defense counsel's assertion that he was an employee of Defendant Craig Hospital. This assertion was abandoned at Dr. Best's deposition. Nonetheless, Plaintiff was without a way, other than deposition, to discover Dr. Best's testimony.

Plaintiff's Response [Doc. # 152] at ¶8.

The plaintiff deposed Dr. Best on August 12, 2010, Transcript of Deposition of Lavar Best, Ph.D. [Doc. # 152-2] ("Best Trans.") at p. 1, and made its Supplemental Disclosure the next day. Consequently, I agree with the plaintiff that the Supplemental Disclosure was made "as soon as practicable," Plaintiff's Response [Doc. # 152] at ¶8, and is timely.

Rule 26(c)(1), Fed. R. Civ. P., provides:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

In view of the defendants' improper assertion, recently abandoned, that Dr. Best was an employee of Craig Hospital and that plaintiff's counsel could not contact him *ex parte*, together with Dr. Best's apparent loyalty to defendant Craig Hospital, I find that any delay in making the more specific Supplemental Disclosure until after Dr. Best's deposition was substantially justified. In addition, any delay is harmless in view of the defendants' apparent ready access to

3

Dr. Best.

Also unpersuasive is the defendants' argument that the plaintiff is attempting to compel Dr. Best to offer expert opinions against his will. The defendants complain that the Supplemental Disclosure demonstrates that the plaintiff intends to solicit from Dr. Best "expert testimony regarding the standard of care. . . ." Motion to Strike [Doc. # 146] at p. 2. The plaintiff argues to the contrary:

> Plaintiff is not offering [Dr. Best's] testimony to render expert opinions about Defendant Bayles' care and treatment or to answer hypothetical questions. Instead, Plaintiff will offer testimony of Dr. Best as demonstrated by her Supplemental 26(a)(2) Disclosure regarding his personal knowledge and observations related to his employment and consulting duties with Defendant Craig Hospital and training of Dr. Bayles. Defendants' argument that Plaintiff cannot compel Dr. Best to act as an expert witness is based on the contention that Plaintiff has endorsed Dr. Best to testify regarding standard of care. Dr. Best's endorsement does not include any standard of care issues and is based solely on his personal knowledge, experience and involvement with Craig Hospital and with Defendant Bayles.

Plaintiff's Response [Doc. # 152] at p. 3.

The issue turns on the distinction between an expert fact witness who has actually observed facts in issue or has personal knowledge of issues being litigated, on the one hand, and an expert who is a stranger to the litigation, on the other hand. See Mark H. Holland, Compelling Experts to Testify, 50 U. COLO. L. REV. 49, 55 (1978); Virginia G. Maurer, Compelling the Expert Witness: Fairness and Utility Under the Federal Rules of Civil Procedure, 19 GA. L. REV. 71, 81-95 (1984). Dr. Best is clearly the former. For example, I am informed, without contradiction, that prior to his retirement Dr. Best worked with Dr. Falci and performed identical services to those at issue here performed by Dr. Bayles. Dr. Best trained Dr. Bayles to

4

perform the services at issue here. Following the surgery on the plaintiff which underlies her malpractice claim, Dr. Falci consulted with Dr. Best. Therefore, I agree that the plaintiff is not asking Dr. Best to render opinions about defendant Bayles' care and treatment of the plaintiff or to answer hypothetical questions about standard of care, but instead is seeking testimony by Dr. Best about "his personal knowledge and observations related to his employment and consulting duties for Craig Hospital and training of Dr. Bayles." Plaintiff's Response [Doc. # 152] at p. 3.

This is in sharp contrast to the facts in Karp v. Cooley, 349 F. Supp. 827, 836-37 (S.D. Tex. 1972), aff'd 493 F.2d 408 (5th Cir. 1974), one of the cases relied on by the defendants. Karp was a medical malpractice case involving open heart surgery and the implantation of a mechanical heart. The plaintiff attempted to subpoena renowned heart specialist Dr. Michael DeBakey to testify at trial. Dr. DeBakey refused to testify arguing:

> [T]hat [he] had not been employed to give any expert medical opinion; that he would not accept any employment in this case; that he had never examined Mr. Karp; that he had never seen Mr. Karp; that he would refuse to express any medical opinion concerning the treatment of Mr. Karp; that he would not express any medical opinion based upon hypothetical questions even if asked to do so; and in connection with the Cooley-Liotta mechanical heart used in Mr. Karp, he would refuse to express an in-court expert opinion concerning that device. Accordingly, [the] court concluded that Dr. DeBakey had no evidence of any probative value to present to the jury.

Id. at 836.

In this case, Dr. Best does possess potentially probative evidence. Although he was not present during the plaintiff's surgery, Dr. Best had prior experience working with Dr. Falci performing the same operation as is at issue here. In doing so, Dr. Best performed the same functions for Dr. Falci as Dr. Bayles performed during the operation in question. Dr. Best

5

trained Dr. Bayles. Dr. Falci consulted with Dr. Best following the plaintiff's surgery. Thus, Dr. Best is not a stranger to the facts of this case in the way Dr. DeBakey was a stranger to the facts in Karp.

Young v. United States, 181 F.R.D. 344 (W.D. Tex. 1997), another case relied on by the defendants, also is unpersuasive. In Young, another medical malpractice case, the plaintiff attempted to force his treating physicians to testify as experts against their will. The Texas court stated:

> In the absence of a statute to the contrary, a professional witness may not generally be compelled to testify as an expert at the request of a private litigant, as such testimony is a matter of contract or bargain. In other words, just because a party wants to make a person work as an expert does not mean that absent the consent of the person in question, the party generally can do so.

Id. at 346 (internal citation omitted). Notwithstanding its sweeping pronouncement, however, the court in Young also held:

> Nevertheless, a treating physician, even though he has not, through additional investigation, qualified himself as an "expert" for the purposes of litigation, may still be asked questions which implicate his expertise. For example, he can be asked about the degree of injury in the future, or about anything else that was a necessary part of the patient's treatment. He cannot, however, be asked to answer questions about medical issues no involved in his diagnosis and treatment.

Id. at 346-47 (internal citations omitted).

Here, as in Young, Dr. Best may be called to testify to facts about which he has personal knowledge. Thus, for example, and assuming that relevancy can be established, the plaintiff may be allowed to ask Dr. Best about the manner in which he performed in earlier operations the functions performed by Dr. Bayles during the plaintiff's operation.

6

I am persuaded by the reasoning in Kaufman v. Edelstein, 539 F.2d 811 (2d Cir. 1976), that there is no reason here to strike the Supplemental Designation or protect Dr. Best from testifying at trial. In that case, the court held:

> [T]he principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience do not recognize any general privilege for experts.
>
> In a notable case the Supreme Court has recently quoted its statement that the public . . . has a right to every man's evidence, except for those persons protected by a constitutional, common-law, or statutory privilege. Admittedly there is no constitutional or statutory privilege against the compulsion of expert testimony, and we perceive no sufficient basis in principle or precedent for holding that the common law recognizes any general privilege to withhold his expert knowledge.
>
> The truth of the proposition that the high degree of a person's knowledge of a subject excuses him from giving testimony about it is not self-evident, to say the least. As Wigmore says, the giving of such testimony
>
> "may be a sacrifice of time and labor, and thus of ease, of profits, or livelihood. This contribution is not to be regarded as a gratuity, or a courtesy, or an ill-required favor. Whoever is impelled to evade or to resent it should retire from the society of organized and civilized communities, and become a hermit. He who will live by a society must let society live by him, when it requires to."

Id. at p. 819-20 (internal citations and quotations omitted except as noted).

Particularly relevant here is the Kaufman court's observation that:

> Often inquiry may be about the development of techniques, the stage they had reached, opinions already formulated or expressed. . . . To clothe all such expert testimony with privilege solely on the basis that the expert "owns" his knowledge free of any testimonial easement would be to seal off too much evidence important to the just determination of disputes.
>
>                     \*   \*   \*
>
> We can find no justification for a federal rule that would wholly exempt experts from placing before a tribunal factual knowledge

> relating to the case in hand, opinions already formulated, or, even, in the rare case where a party may seek this and the witness feels able to answer, a freshly formed opinion, simply because they have become expert in a particular calling.

Id. at p. 821 (internal footnote omitted).

That is not to say that there is no limit to compelling an expert to testify. Again, as noted in Kaufman:

> What gives some pause about compelling expert testimony is not that the expert is called upon to make available to the community relevant knowledge that he has acquired through time and labor, but that since his knowledge, in contrast to that of the ordinary witness, is relevant to many cases, he may be summoned too often, both because of his eminence and because published views may eliminate the usual practical deterrent against calling an expert with whom counsel has not conferred in advance. A court would indeed have cause for concern if, for example, a world-renowned surgeon were forced to spend a considerable share of his time in the courtroom rather than the operating room; the interest in the saving of lives would outweigh a party's interest in obtaining testimony from an expert having no previous connection with the case.

Id.

The court in Kaufman proposed a multi-factor test to assist in determining whether to compel the testimony of a reluctant expert, as follows:

> Appropriate factors for consideration . . .would be the degree to which the expert is being called because of his knowledge of facts relevant to the case rather than in order to give opinion testimony; the difference between testifying to a previously formed or expressed opinion and forming a new one; the possibility that, for other reasons, the witness is a unique expert; the extent to which the calling party is able to show the unlikelihood that any comparable witness will willingly testify; the degree to which the witness is able to show that he has been oppressed by having continually to testify; and, undoubtedly, many others.

Id. at p. 822.

Here, application of the factors articulated in the Kaufman case tips decidedly against striking the Supplemental Disclosure or preventing the plaintiff from calling Dr. Best to testify at trial. Most importantly, Dr. Best is being called to testify primarily as to facts about which he has unique personal knowledge. His expertise is the reason he was able to be present and observe the facts, but is secondary. The plaintiff makes clear that she will not ask Dr. Best to render any expert opinions about Dr. Bayles' care and treatment of the plaintiff or to answer any hypothetical questions. Plaintiff's Response [Doc. # 152] at p. 3. Consequently, Dr. Best will at most be asked to express previously formed opinions and will not be required to form any new ones. In view of Dr. Best's personal experience with the particular procedure at issue here and his special knowledge of Drs. Falci and Bayles, he is a unique expert. Finally, and importantly, there is no showing, or even any suggestion, that Dr. Best, a retired man of 80 years age, is being oppressed by having continually to testify.

IT IS ORDERED that the Motion to Strike [Doc. # 146] is DENIED.

Dated September 22, 2010.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge