IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 09-cv-02121-KHV-BNB

KAREN S. ZANDER,

Plaintiff,

v.

CRAIG HOSPITAL, and
RICK BAYLES, PH.D., CNIM,

Defendants.
_____

**ORDER**
_____

This matter arises on **Plaintiff's Third Motion to Compel Investigative Documents** [Doc. # 176, filed 1/28/2011] (the "Third Motion to Compel"), which is GRANTED.

Since at least December 11, 2009 (or for the last 15 months), the plaintiff has been attempting in various ways to obtain information about Craig Hospital's investigative file concerning Karen Zander's care, and a privilege log itemizing responsive documents that Craig Hospital claims are privileged. See, e.g., Deposition of Charlotte Starnes Indeck, R.N. [Doc. # 39-3] at p. 86 line 6 through p. 96 line 25. Craig Hospital has resisted those efforts, requiring numerous motions to compel. Despite the efforts of the plaintiff to obtain the documents and a complete privilege log, and my orders compelling Craig Hospital to turn over the documents and specify those claimed as privileged, new documents were recently revealed that are responsive to the plaintiff's discovery requests but that have not been disclosed despite months of effort. See Defendants Craig hospital and Rick Bayles, Ph.D., CNIM's Fourth Privilege Log [Doc. # 184, filed 2/17/2011] (the "Fourth Privilege Log"). I find, at a minimum, that Craig Hospital and its

counsel have not fulfilled their obligations under Rule 26(g), Fed. R. Civ. P., to make a timely, reasonable, and diligent search for all documents responsive to the plaintiff's discovery requests. The recently revealed documents, if not previously known, reasonably should have been located months ago and either produced or listed on Craig Hospital's privilege log. Craig Hospital's failure to timely identify the recently revealed documents and, if they are privileged as Craig Hospital asserts, to list them on the privilege log constitutes a violation of Rule 26(g) and a waiver of any asserted privilege. See Peat, Marwick, Mitchell & Co. v. West, 748 F.2d 540, 542 (10th Cir. 1984).

This is a negligence case against Dr. Rick Bayles, Ph.D., CNIM, in which the plaintiff alleges that Dr. Bayles breached the standard of care in connection with his responsibilities to monitor and report the plaintiff's somatosensory-evoked potential waveforms during spinal surgery. Complaint [Doc. # 1] at pp. 15-17. Craig Hospital is sued on a theory of respondeat superior as Dr. Bayles' employer. Id. at pp. 17-18. The plaintiff claims that she was rendered paraplegic as a result of Dr. Bayles' negligence. Scheduling Order [Doc. # 11] at p. 4.

In February 2010, the plaintiff moved to compel the production of documents comprising Craig Hospital's "quality management program." Plaintiff's Motion to Compel [Doc. # 39, filed 2/15/2010] at ¶9. In April 2010, I entered an order compelling Craig Hospital to produce the organic documents which Craig Hospital identified as containing its quality management program. Order [Doc. # 63, filed 4/8/2010]. In doing so, I explained my understanding of the scope of the Colorado statutory quality assurance privilege[1] as follows:

---

[1]The privilege is codified at section 25-3-109, C.R.S.

> The Colorado quality assurance privilege created by section 25-3-109 contemplates that licensed health care facilities may create a "quality management program" which they may submit to the Colorado department of public health and environment for approval. Section 25-3-109(2), C.R.S. After a facility obtains approval of its quality management program, it may engage in the quality management functions described in its quality management program, such as gathering and preparing "records, reports, or other information" to "identify, evaluate, and reduce risk . . . or to improve the quality of patient care," and those activities are confidential and not discoverable pursuant to the quality assurance privilege. Section 25-3-109(3)-(4), C.R.S.
>
> \* \* \*
>
> The plain language of the statute declares that only the "records, reports, or other information of a licensed or certified health care facility" resulting from activities "described . . . in a quality management program" which has been approved by the state are confidential. Information resulting from other sources, including gossip or a doctor acting on his own initiative, if not described by the facility in its state approved quality management program, is not privileged. . . . The quality assurance privilege is not designed to hide from discovery admissions or inconsistent statements made outside the scope of a health care facility's approved quality management program.

Order [Doc. # 63] at pp. 6-7, 10-11.

Craig Hospital filed an objection, and the order compelling discovery was stayed pending review by the district judge. Order [Doc. # 69, filed 4/20/2010]. The district judge overruled the objection. Order Overruling Objections [Doc. # 72, filed 5/10/2010]. Craig Hospital sought mandamus review in the Tenth Circuit Court of Appeals, which stayed the order pending its review. Order [Doc. # 85, filed 5/28/2010]. The circuit court denied Craig Hospital's writ on June 10, 2010. Order [Doc. # 87]. The plaintiff finally received the organic documents on June 14, 2010. See Motion to Compel [Doc. # 90, filed 7/2/2010] at ¶6.

On May 24, 2010, while waiting to receive the organic documents, the plaintiff "issued [d]iscovery to Craig Hospital requesting all documents related to the reporting and investigation

of Ms. Zander's case." Id. at ¶7.  Included was the plaintiff's Request for Production No. 4, which sought:

> Please produce all DOCUMENTS of any type, including electronically stored information, pertaining to the reporting and investigation of the incident or "occurrence" or "sentinel event" involving Karen Zander, which was prepared, generated or reviewed from the time of the INCIDENT through the date of filing of this litigation, including insurance claim files, Quality Assessment records, Peer Review records and patient advocate records.  This request specifically includes all such DOCUMENTS in the possession or control of Craig Hospital, Paul Cooper and the Law Firm of Cooper & Clough, P.C.  This request is to be construed broadly.

Plaintiff's Second Set of Discovery [Doc. # 90-3] at Request for Production No. 4.  In June 2010, Craig Hospital objected to Request for Production No. 4 because, among other things:

> It . . . seeks information protected from discovery by Colorado law.  C.R.S. § 25-3-109(3) states that "any records, reports or other information . . . that are part of a quality management program . . . shall be confidential information."  The statute states that the "records, reports and other information described in subsection (3) . . . **shall not be subject to subpoena or discoverable or admissible as evidence in any civil or administrative proceeding**."  C.R.S. § 25-3-109(4).  (Emphasis added.)  This request for production improperly seeks documents that fall squarely within the definition of documents protected by statute and requests confidential information that is protected from discovery.  The statutory protections are not "waived" even if Plaintiff at some point determines the organic documents were not "complied with."

Craig Hospital's Answers to Plaintiff's Second Set of Discovery [Doc. # 90-4] at p. 3 (original emphasis).

No documents were produced in response to the plaintiff's Request for Production No. 4, see Order [Doc. # 156] at p. 3, but Craig Hospital did provide a one page privilege log.  The privilege stated in its entirety:

4

| Document Type | Summary of Document | Basis for Privilege |
|---|---|---|
| Documents created in furtherance of Craig Hospital's implementation of quality management functions, pursuant to C.R.S. § 25-3-109 | Documents created pursuant to quality performance functions at Craig Hospital to review the outcome of Ms. Zander's neurosurgeries | C.R.S. § 25-3-109(3) states that "any records, reports, or other information of a licensed or certified health care facility that are part of a quality management program designed to identify, evaluate, and reduce the risk of patient or resident injury associated with care or to improve the quality of patient care shall be confidential information." This statute specifically provides that any information that is part of a hospital's quality-assurance program shall be confidential and protected from disclosure in a civil suit.<br><br>This document, as well as all documents created under the Performance Improvement and Safety Management Plan was specifically prepared as part of Craig's quality management program, is intended to be confidential and was created in reliance upon the protections of C.R.S. § 25-3-109. |

Craig Hospital's Answers to Plaintiff's Second Set of Discovery [Doc. # 90-4] at p. 7.

Craig Hospital's response led to the plaintiff's first Motion to Compel Investigative Documents [Doc. # 90, filed 7/2/2010] (the "First Motion to Compel"). At the hearing on the First Motion to Compel, I held that the privilege log was inadequate and ruled:

> I'm going to require that Craig Hospital attempt to meet its burden of establishing the applicability of the privilege asserted. I could have found that the blatantly inadequate privilege log waived the privilege, but we're wading into sort of new ground here, and I just thought that was unfair. So I think Craig Hospital must go back and prepare an adequate privilege log. That log will list out any documents which Craig Hospital claims are privileged and will tell the plaintiff what privilege is being asserted and which quality management function under which quality management program is being asserted. The date of the creation of the document, who created it, who it was sent to, if anyone, who it was copied to, if anyone, and the general topic, without disclosing the confidential information itself, but sufficient so that the plaintiff can review it and make a reasoned judgment about whether the privilege appears to have been met or not.
> 
> \* \* \*
> 
> If a document was or wasn't created is not privileged. Who created it is not privileged. Who it was sent to is not privileged. What it

> says may be privileged. Once that privilege log and, if appropriate,
> supporting affidavit are completed and sent to the plaintiff and
> reviewed, then if there's some problem--and maybe Ms. Polonsky's
> deposition taken to inquire for more facts, then if there's some
> question about whether or not the privilege did attach or has been
> waived, that should be brought in a motion. . . .

Transcript of Proceedings [Doc. # 122, filed 7/23/2010] at p.23 line 10 through p. 24 line 23.

In a supplemental privilege log dated August 13, 2010, Craig Hospital identified six documents responsive to the production request but which it claimed were privileged pursuant to the quality management privilege. Defendants Supplemental Privilege Log [Doc. # 134-3] (the "Supplemental Privilege Log"). Still no documents were produced. The Supplemental Privilege Log is signed by Craig Hospital's lawyer and states in relevant part:

> Come now Defendants . . . through counsel . . . and hereby submit
> their Privilege Log of materials responsive to the Court's Order of
> July 16, 2010. Defendants incorporate their objections and
> responses to Plaintiff's Motion to Compel and assert that the
> following materials are protected by the Quality Management
> privilege C.R.S. § 25-3-109. Defendants have not waived any
> privilege or confidentiality in these materials by responding to the
> Court's Order or the filing of this Privilege Log.

Id.

Further issues arose concerning the adequacy of Craig Hospital's response to the plaintiff's Request for Production No. 4, leading to Plaintiff's Second Motion to Compel Investigative Documents [Doc. # 125, filed 7/27/2010] (the "Second Motion to Compel"). I granted the Second Motion to Compel in part and denied it in part. I noted that Craig Hospital withheld six identified documents on a claim of privilege, and I upheld that assertion of privilege. Craig Hospital's discovery response was vague as to whether there were other documents, in addition to the six privileged documents, that were responsive to Production Request No. 4 but

that had not been produced. I was suspicious that there were additional responsive documents.

As a result of the lack of clarity, I ruled:

> There is no indication that any documents were produced in response to the plaintiff's Request for Production No. 4, nor is there a clear statement that all responsive documents are claimed to be privileged. . . .
>
> A party resisting discovery based on a privilege has the burden of establishing that the privilege applies. Peat, Marwick, Mitchell & Co. v. West, 748 F.2d 540, 542 (10th Cir. 1984). Under Fed. R. Civ. P. 26(b)(5)(A), when a party withholds documents based on a claim of privilege, the party must "expressly make the claim" and "describe the nature of the documents . . . and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." This ordinarily is accomplished through a privilege log. A privilege log is sufficient if it describes in detail the documents sought to be withheld and provides the precise reasons supporting the claim of privilege. Hill v. McHenry, 2002 WL 598331 *2 (D. Kan. 2002). The information provided must be sufficient to enable opposing parties and the court to determine whether each element of the asserted privilege is satisfied; a blanket claim of the asserted privilege does not satisfy the burden of proof. Id. Generally, a privilege log is adequate if it identifies with particularity the documents withheld, including their date of creation, author, title or caption, addressee and each recipient, and general nature or purpose for creation.
>
> \* \* \*
>
> Craig Hospital has failed to assert or establish a privilege protecting from disclosure other documents (if any) responsive to the plaintiff's Request for Production No. 4. Those documents, if any, must be produced.

Order [Doc. # 156, filed 10/13/2010] at pp. 9-10, 14.

Pursuant to an order entered on November 10, 2010, the plaintiff was allowed to reopen the deposition of Dana Polonsky, an employee of Craig Hospital, to inquire into the completeness of Craig Hospital's disclosure of documents responsive to Request for Production No. 4, among other things. Transcript of Proceedings [Doc. # 168] at p. 12 line 23 through p. 17 line 4. At the

hearing where I allowed further discovery, the following exchange occurred:

> MS. LACRUE [plaintiff's counsel]: I guess I would just clarify. In your order you ruled that the documents that they listed on their privilege log were privileged but any documents not identified that we are able to obtain the identity of would not come under the privilege, as well as any documents that Dr. Bayles or Dr. Falci created outside the quality management process, and so we would be interested in talking to Ms. Polonsky, Dr. Bayles, and Dr. Falci about those additional documents that haven't been listed on the privilege log or possibly outside the quality management program
>
> I think if Craig has anything additional that's responsive to our request and they haven't produced that, pursuant to your order, those documents have now been--the privilege has been waived for those documents because they weren't listed on the privilege log. Is that correct?
>
> \* \* \*
>
> MS. MCCLUNG [Craig Hospital's counsel]: To the best of our investigation at this point, we have produced everything that they have told us they have. That being said and being very familiar with hospitals, I can envision an instance where someone says, oh, but wait, we did have another document that went here and went there, and they--and even though we requested and investigated earlier, they didn't remember at the time that it was there and it existed. In that instance I think we should be permitted to at least bring that to the Court's attention and move for a protective order if it's appropriate. However--because, again, we've asked everybody that we can know to ask at this point in time and produced all the documents we have been provided, but to the extent that somebody says, oh, but, we'd like--
>
> THE COURT: Well, how [would] that happen?
>
> MS. MCCLUNG: Well, because a hospital is a big place. We have numerous employees that come and go. The person who may be there today may not have been there five years ago. The person who was in charge of this thing is now somewhere else, and so--again, hospitals are big entities, to the best they can, we got--we believe we've got the documents that were involved and all of the documents that were involved.
>
> THE COURT: And that's--I guess that's the point of my question. I understand that you've made a diligent and thorough inquiry, as

>
> the rule requires, and you've identified everything that inquiry revealed.
>
> MS. MCCLUNG: Right.
>
> THE COURT: Okay. So how is a new document going to be discovered?
>
> MS. MCCLUNG: Well, that's a question--to the best of our ability, I don't think there will be any more, and so I'm telling you, Judge, right now I don't think that there will be any more documents that will be produced or a privilege claimed for at this point in time, but all I'm saying is I don't want to, you know, shut the door and preclude the fact that someone else out there, you know, that we'd talked to subsequently. We've talked to everybody we believe should know and know everything about this process, but, you know, again, just having represented hospital[s] for many years, I can envision the circumstance under which, oh, by the way, we just found this.
>
> THE COURT: Well, so to answer your question, Ms. LaCrue, if there was a document of which Craig Hospital knew and the lawyers were aware and it wasn't listed on the privilege log, my view as I sit here right now is that the privilege has been waived because the requirements of preparing a privilege log weren't met. I'm told--and I don't have any reason to doubt it--that that's not the case. Everything that they know about either was produced or was listed on the privilege log. If another document comes to light for whatever reason, I'll take that issue up as it comes, so I can't tell you now that it's necessarily waived.

Transcript of Proceedings [Doc. # 168] at p. 9 line 10 through p. 12 line 8.

Other documents have come to light. See Fourth Privilege Log [Doc. # 184].

Dana Polonsky is the Vice President of Clinical Services at Craig Hospital. Affidavit of Dana Polonsky [Doc. # 98-1] (the "First Polonsky Aff."] at ¶1. Craig Hospital disclosed her as a person with knowledge "of the quality management functions and investigations relating to Plaintiff, and that these functions/investigations were performed pursuant to Craig's quality management program, and were performed with the understanding that any information would be

9

protected by Colorado statute." Defendants' Fourth Supplemental Disclosures [Doc. # 186-3] at p. 2. Ms. Polonsky previously stated under oath that she has "knowledge of the confidential investigation taken regarding Karen Zander's care and treatment," First Polonsky Aff. [Doc. # 98-1] at ¶1, and that reports concerning that investigation were made "to hospital leadership" on October 21, 2007, and to "hospital administration, department directors, Quality Council, administrative committee of the board and the board of directors." Affidavit of Dana Polonsky [Doc. # 176-4] (the "Second Polonsky Aff.") at ¶¶6, 8.[2]

Ms. Polonsky is the person responsible for assisting Craig Hospital's counsel in locating and producing documents responsive to the plaintiff's discovery requests. Deposition of Dana Polonsky [Doc. # 176-3] (the "Polonsky Depo.") at p. 223 line 24 through p. 226 line 16.

Ms. Polonsky's deposition was reopened on January 4, 2011. Third Motion to Compel [Doc. # 176] at ¶8. In what can only be described as easily anticipated questioning, in view of the Second Polonsky Affidavit, plaintiff's counsel learned that minutes were prepared of those meetings where the Zander investigation was discussed with the hospital leadership, Polonsky Depo. [Doc. # 176-3] at p. 164 line 16 through p. 165 line 23; the department directors, id. at p.169 lines 2-12; the Quality Council, id. at p. 170 lines 4-18; and the administrative committee of the board. Id. at p. 171 line 20 through p. 172 line 25. These minutes are the recently revealed documents responsive to the plaintiff's Request for Production No. 4 which were not previously produced, not previously listed on Craig Hospital's privilege log, and for which Craig Hospital now attempts to invoke the quality assurance privilege to block discovery.

---

[2]Significantly, the Second Polonsky Affidavit was executed on July 26, 2010, early in the plaintiff's struggle to obtain Craig Hospital's investigative documents.

10

Rule 26(g), Fed. R. Civ. P., requires in relevant part:

> [E]very discovery request, response, or objection must be signed by at least one attorney of record in the attorney's own name. . . .  By signing, an attorney . . . certifies that to the best of the person's knowledge, information, and belief **formed after a reasonable inquiry**:
>
> \* \* \*
>
> **(B)** with respect to a discovery request, response, or objection, it is:
>
> **(i)** consistent with these rules. . . .

(Emphasis added.)

Rule 34(b), Fed. R. Civ. P., concerning the production of documents, provides:

> **(b)(2)** *Responses and Objections*
>
> \* \* \*
>
> **(B)** *Responding to Each Item.* For each item or category, the response must either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons.
>
> **(C)** *Objections.* An objection to part of a request must specify the part and permit inspection of the rest.

The obligations imposed by Rule 26(g) have been explained as follows:

> Rule 26(g) does not require the signing attorney to certify the truthfulness of the client's factual responses to a discovery request. Rather, the signature certifies that the lawyer has made a reasonable effort to assure that the client has provided all the information and documents available to him that are responsive to the discovery demand.

State Farm Mutual Automobile Ins. Co. v. New Horizont, Inc., 250 F.R.D. 203, 220 (E.D. Pa. 2008).

This case is factually similar to Fendi Adele S.R.L. v. Filene's Basement, Inc., 2009 WL 855955 *8 (S.D.N.Y. March 24, 2009), where the court stated:

11

> The broader, and more troubling, set of circumstances invoked by plaintiffs concerns the evident pattern of non-production of documents, coupled with false assurances that Filene's had produced all of its documents--a pattern starting with the initial, and supposedly final, production of 61 pages of documents in 2006. It should not require reiteration that litigants have an obligation, when discovery is sought from them, to make reasonable efforts to locate responsive documents, including setting up a reasonable procedure to distribute discovery requests to all employees and agents potentially possessing responsive information, and to account for the collection and subsequent production of the information. It is equally the litigant's responsibility (and that of its counsel) to determine beforehand the accuracy of any representations that production is complete. . . . Filene's and its counsel did not come remotely close to meeting this responsibility.
>
> The initial production of a handful of documents--notably bare of some of the most basic documents that a company of the size and sophistication of Filene's would unquestionably maintain-- was manifestly inadequate and the representation that there were no more documents was absurd on its face. The process of extracting those records was akin to pulling teeth, and ultimately consumed a plainly unreasonable amount of time to accomplish. Moreover, it appears that the company made less than vigorous efforts to ensure that people with knowledge of, or access to, the potentially pertinent documents were given specific instructions to search for the categories of documents requested in its first, second and third iterations was patently inadequate and the representations by defendants and their attorneys as to the completeness of production were false.

A reasonable search by Craig Hospital and its counsel for documents responsive to plaintiff's Request for Production No. 4 would have disclosed the recently revealed documents. The production request is clear, and any doubts about its scope were or could have been clarified at the several hearings where the plaintiff sought, and I compelled, the production of documents and a privilege log. This was not a burdensome production; only a handful of documents have been identified as responsive to the request. At the latest, the recently revealed documents should have been identified following the hearing on November 10, 2010, when I probed Craig

Hospital's counsel about the scope of the search conducted and obtained assurances that they had "talked to everybody we believe should know" about the existence of responsive documents; that "[t]o the best of our investigation at this point, we have produced everything that they have told us they have"; and that Craig Hospital and its counsel had made "a diligent and thorough inquiry, as the rule requires." Transcript of Proceedings [Doc. # 168] at p. 9 line 10 through p. 12 line 8. Craig Hospital's counsel either did not talk to Ms. Polonsky, their primary client contact in complying with the plaintiff's production request, or they did not reasonably probe to determine the documents responsive to the request. In any event, the recently revealed documents reasonably should have been discovered and produced or listed on a privilege log months ago. Instead, Craig Hospital waited until Ms. Polonsky's reopened deposition on January 4, 2011, to disclose the existence of the recently revealed documents.

Craig Hospital has failed to timely disclose the existence of the recently revealed documents and to clearly establish that they are privileged. Consequently, I find that any claim of privilege with respect to the recently revealed documents is waived. See Peat, Marwick, 748 F.2d at 542 (holding that "[i]t is not enough that a document would have been privileged if an adequate and timely showing had been made. The applicability of the privilege turns on the adequacy and timeliness of the showing as well as on the nature of the document").

IT IS ORDERED that the Third Motion to Compel is GRANTED. Defendant Craig Hospital shall produce to the plaintiff, on or before **March 18, 2011**, the documents identified on Defendants Craig Hospital and Rick Bayles, Ph.D., CNIM's Fourth Privilege Log [Doc. # 184].

Dated March 4, 2011.

                                                    BY THE COURT:

                                                    s/ Boyd N. Boland
                                                    United States Magistrate Judge